**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| CHANGXI WANG,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Respondents. | Case No. 5:26-cv-04262-DFM<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

On July 29, 2026, Petitioner Changxi Wang, an immigration detainee at the Adelanto ICE Processing Center, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. See Dkt. 1 ("Petition"). Petitioner seeks release from custody and related declaratory and injunctive relief. Respondents filed an Answer on August 7, 2026. See Dkt. 12 ("Answer").

In their Answer, Respondents rely on 8 U.S.C. § 1231(a)(6) and a declaration stating that Petitioner refused to cooperate during two travel interviews. The Court ordered Respondents to lodge the custody determinations, interview records, travel-document information, and other materials needed to evaluate those asserted bases for detention. See Dkt. 14. Respondents filed nothing in response, and their deadline to do so has passed.

For the reasons stated below, the Petition is **GRANTED** in part as to Count I. Respondents must release Petitioner Changxi Wang (A# 088-478-446) under appropriate conditions of supervision within 48 hours. The remaining claims and requests for relief are **DENIED**.

## II. BACKGROUND

Petitioner is a native and citizen of China. See Dkt. 12-1 ("Lajuj Decl.") ¶ 4. He entered the United States in April 2007 as a nonimmigrant visitor. See Petition ¶ 25; Lajuj Decl. ¶ 5. In April 2008, U.S. Citizenship and Immigration Services issued Petitioner a Notice to Appear (Form I-862) and referred his Application for Asylum and Withholding of Removal to an Immigration Judge ("IJ"). See Petition ¶ 28; Lajuj Decl. ¶ 7. On March 31, 2011, an IJ ordered Petitioner removed to China in absentia. See Petition ¶ 28; Lajuj Decl. ¶ 8 & Ex. A (Removal Order). The Removal Order became final in 2011. See Petition ¶ 28.

Petitioner's spouse was granted asylum in December 2023 and later filed a Form I-730 petition on his behalf. See id. ¶¶ 26, 29; Lajuj Decl. ¶ 9. On July 22, 2026, Petitioner appeared for a scheduled immigration interview and was arrested by ICE. See Petition ¶¶ 29-30; Lajuj Decl. ¶ 10. He has remained detained at Adelanto since then. See id.

An ICE deportation officer who has reviewed Petitioner's case tells the Court that "the travel unit" attempted to interview Petitioner on July 27 and July 30, 2026, but that he "refused to cooperate." Lajuj Decl. ¶ 11. The declaration does not identify what Petitioner was asked to do, what he declined to do, what instructions he received, or how his conduct impeded removal. On July 30, 2026, ICE made a formal request to the Embassy of the People's Republic of China for travel documents and requested that a passport or other travel documents be provided within 30 days. See id. ¶ 12. The deportation officer tells the Court that the government "expects a travel

document for [Petitioner] will soon be issued," but acknowledged that "[t]he estimate time for production of a travel document to China varies." Id. ¶ 14.

The Answer contends that Petitioner is detained under § 1231(a)(6), that his detention is well within the six-month period discussed in Zadvydas v. Davis, 533 U.S. 678 (2001), and that his removal is reasonably foreseeable. See Answer at 2-4. It also states that he had been "in noncompliance since 2011 for failing to depart" and had not requested a bond hearing in immigration court. See id. at 2.

On August 17, 2026, the Court ordered Respondents to lodge, within seven days: (1) documents identifying the claimed statutory authority for Petitioner's arrest and current detention, including any custody determination or finding that he presents a community risk or is unlikely to comply; (2) any determination or record invoking § 1231(a)(1)(C); (3) the complete records of the July 27 and July 30 interviews; (4) the current status of the request to the Chinese Embassy; and (5) all materials concerning custody review under 8 C.F.R. § 241.4. See Dkt. 14 at 2. Each party was invited to file a supplemental brief within seven days after the lodging deadline. See id. at 2-3.

Petitioner filed a supplemental brief on August 23, 2026. See Dkt. 15. He argues that his asserted ground of removability is not listed in § 1231(a)(6) and that the conclusory description of his conduct does not establish that he may remain in detention under § 1231(a)(1)(C). See id. One day later, Petitioner filed notice that counsel had sent ICE a written request for release or custody review, together with a proposed release plan. See Dkt. 16 at 1-3, 5-11. Respondents did not lodge any of the ordered materials, file a supplemental brief, request an extension, or respond to Petitioner's release request. The Court must decide the matter on the record the parties submitted.

## III. LEGAL STANDARD

A district court may grant habeas relief when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This Court has jurisdiction over a challenge to the statutory basis for present immigration detention that does not contest the validity of a removal order. See Trinidad y Garcia v. Thomas, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (per curiam).

Section 1231 governs detention after a removal order becomes administratively final. The Government generally must remove the noncitizen within a 90-day "removal period," during which detention is mandatory. 8 U.S.C. § 1231(a)(1)-(2). After that period, the noncitizen ordinarily "shall be subject to supervision" under conditions prescribed by regulation. Id. § 1231(a)(3). Congress separately authorized continued detention beyond the removal period for a noncitizen who is inadmissible under § 1182, removable under § 1227(a)(1)(C), (a)(2), or (a)(4), "or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." Id. § 1231(a)(6). The Supreme Court has described § 1231(a)(6) as applying to these "certain categories of aliens." Zadvydas, 533 U.S. at 682, 688-89.

The removal period is also extended, and detention may continue during the extension, if the noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal." 8 U.S.C. § 1231(a)(1)(C). ICE ordinarily serves a Notice of Failure to Comply that identifies the circumstances showing noncompliance and the steps needed to cure it. See 8 C.F.R. § 241.4(g)(5)(ii). In Pelich v. INS, the Ninth Circuit applied § 1231(a)(1)(C) where a detainee refused to complete a Polish passport application and gave conflicting information concerning his identity and

nationality. See 329 F.3d 1057, 1059-61 (9th Cir. 2003). In Lema v. INS, the court held that detention may continue so long as a noncitizen fails to cooperate fully and honestly in obtaining travel documents. See 341 F.3d 853, 856-57 (9th Cir. 2003).

## IV. DISCUSSION

### A. Jurisdiction and Exhaustion

Petitioner challenges his present physical custody, not the validity of his removal order. The Court therefore has habeas jurisdiction under § 2241. Respondents argue that Petitioner failed to exhaust because he did not request a bond hearing in immigration court. See Answer at 2. But Respondents place Petitioner under § 1231, not the pre-removal-order detention statute, and identify no available immigration-court bond procedure that could decide the statutory question presented here. Moreover, exhaustion in this setting is prudential rather than jurisdictional. See Laing v. Ashcroft, 370 F.3d 994, 997, 1000-01 (9th Cir. 2004). Petitioner asked ICE for release and custody review on August 22, and the record contains no response. See Dkt. 16. Requiring an additional administrative request would not offer a remedy for the present claim. The Court therefore declines to dismiss for nonexhaustion.

### B. The Record Does Not Establish Authority Under § 1231(a)(6)

Petitioner's 90-day removal period expired years before his July 2026 arrest. His detention must rest on authority to detain beyond that period. Respondents invoke § 1231(a)(6), but that provision does not authorize detention merely because a person has a final removal order. It identifies specific categories of individuals who may be detained beyond the removal period.

On the record before the Court, none of the categories have been established. Petitioner's asserted ground of removability—remaining in the United States longer than permitted under § 1227(a)(1)(B)—is not among the

statutory grounds listed in § 1231(a)(6). The Government does not contend that Petitioner is inadmissible under § 1182 or removable under § 1227(a)(1)(C), (a)(2), or (a)(4). Nor has it produced a determination that Petitioner is a risk to the community or unlikely to comply with the removal order. A deportation officer's statement that, "[g]iven the travel itinerary," Petitioner "should not be released from custody," Lajuj Decl. ¶ 10, does not identify an individualized determination under § 1231(a)(6), and no supporting custody record accompanied it.

The Court ordered Respondents to provide any Form I-286, warrant, custody determination, post-order custody review, or finding addressing community risk or likelihood of compliance. See Dkt. 14 at 2. Respondents did not produce any of those materials or explain their absence. Respondents' noncompliance leaves the developed record without evidence supporting Petitioner's detention under § 1231(a)(6).

Respondents' reliance on Zadvydas does not cure the problem. See Answer at 3-5. Zadvydas construed the duration of detention that § 1231(a)(6) authorizes for a noncitizen who falls within one of that provision's categories. See 533 U.S. at 688-89, 699-701. It did not hold that every person with a final removal order may be detained for six months without regard to the provision's requirements.

### C. Section 1231(a)(1)(C)

The deportation officer's declaration also states that Petitioner "refused to cooperate" during travel interviews on July 27 and July 30. See Lajuj Decl. ¶ 11. That statement implicates § 1231(a)(1)(C) but does not conclusively establish that Petitioner failed to make a timely good-faith application for a necessary travel document, conspired to prevent removal, or took an action that prevented removal.

In Pelich, the detainee repeatedly refused to complete a passport application and provided conflicting identity and nationality information. See 329 F.3d at 1059-61. In Lema, the detainee failed to reapply for travel documents and did not provide requested corroborating information after making inconsistent nationality representations. See 341 F.3d at 855-57. Here, the declaration does not say what question Petitioner declined to answer, what form he declined to complete, whether he was instructed how to comply, or whether his conduct delayed or prevented China from issuing a document.

The Court ordered Respondents to lodge the complete interview records, all forms presented to Petitioner, the instructions given, interpreter information, any request for counsel, the factual basis for the noncooperation characterization, any § 1231(a)(1)(C) determination, any Notice of Failure to Comply, and the status of the Embassy request. See Dkt. 14 at 2. Respondents produced none of it. Accordingly, there is no evidence here—save the declaration of a deportation officer who appears to lack personal knowledge—of the underlying conduct. Nor is there any evidence that China denied or delayed a travel document because of anything Petitioner did or failed to do.

### D. Remaining Claims and Requested Relief

On this record, the Court will order release and does not reach Petitioner's remaining claims or request for injunctive relief. Furthermore, the Court expresses no view on any future re-detention on a different record. Petitioner's additional request to prohibit his removal for at least fourteen days after release would restrain execution of the removal order and falls outside this Court's jurisdiction under 8 U.S.C. § 1252(g). See Rauda v. Jennings, 55 F.4th 773, 777-81 (9th Cir. 2022).

## V. ORDER

For the foregoing reasons, IT IS ORDERED that:

1. The Petition is **GRANTED** in part as to Count I. Respondents shall release Petitioner Changxi Wang (A# 088-478-446) from custody no later than 48 hours after entry of this Order, subject to reasonable conditions of supervision authorized by 8 U.S.C. § 1231(a)(3) and applicable regulations.

2. Within five (5) days, Respondents shall file a notice confirming that release.

3. Count II's alternative request for a custody hearing is **DENIED AS MOOT**.

4. Count III is **DENIED WITHOUT PREJUDICE**. Petitioner's request to enjoin execution of his removal order is **DISMISSED FOR LACK OF JURISDICTION**.

5. Nothing in this Order adjudicates the validity of Petitioner's removal order or prevents the Government from imposing lawful supervision conditions. Nor does it preclude detention based on materially changed circumstances and a statutory predicate established in accordance with applicable law.

6. Any application for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, shall be filed in accordance with that statute.

7. Judgment shall be entered consistent with this Order.

Date: September 2, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge